# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| BANK OF THE OZARKS, | * | |
| Plaintiff, | * | |
| vs. | * | CV 212-013 |
| PRINCE LAND, LLC, and THOMAS A. TIMBES, II, | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Plaintiff, Bank of the Ozarks. See Dkt. No. 26. For the reasons stated below, Plaintiff's motion is **GRANTED**.

## BACKGROUND

Bank of the Ozarks brought suit seeking to recover on a Promissory Note issued to Defendant Prince Land, LLC and guaranteed by Defendant Thomas Timbes, II. See Dkt. No. 17. The principal amount of the Note was $719,000.00. Dkt. No. 17 ¶ 6.

Bank of the Ozarks acquired the Note and the Guaranty Agreement after Oglethorpe Bank was closed by the Georgia Department of Banking and Finance. See Dkt. No. 17 ¶ 15.

Following the closure, the Federal Deposit Insurance Corporation (FDIC) was appointed the receiver for Oglethorpe Bank, and Bank of the Ozarks later purchased Oglethorpe Bank's loan documents from the FDIC. See Dkt. No. 17 ¶¶ 16-19.

Defendants admit executing both the Note and the Guaranty Agreement. See Dkt. No. 28. They also admit they are in default. See Dkt. No. 28. Defendants have abandoned all defenses raised except two—breach of a "concurrent condition" and estoppel. See Dkt. Nos. 26, 28. Both of those defenses are based on an agreement allegedly made between Oglethorpe Bank, who was Bank of the Ozarks's successor, Timbes, and Timbes's father. See Dkt. No. 28, Ex. 1-2.

According to Defendants, to benefit Timbes's father's business, Oglethorpe Bank's Executive Vice President, Robert Strange, and Timbes's father recruited Timbes to serve as a "strawman" in this transaction. See Dkt. No. 28, Ex. 1-2 ¶ 3. According to Timbes, he was, at that time, "a college student at the University of Georgia, unemployed and with no assets," who would never qualify for a loan of this size absent the arrangement between Oglethorpe Bank and his father. See Dkt. No. 28, Ex. 1 ¶ 5. Strange suggested that Timbes could serve as an "interest holder" because Timbes's father was unable to "qualify for the loan" himself. See Dkt. No. 28, Ex. 1 ¶¶ 4-5. Timbes also testified that Oglethorpe Bank gave Timbes's

AO 72A
(Rev. 8/82)

father a line of credit. See Dkt. No. 28, Ex. 1, ¶ 7. This line of credit was the foundation for the alleged agreement because Strange promised that he would insure that, through the line of credit, Timbes's father would always have "sufficient funds to make all Note payments on time." See Dkt. No. 28, Ex. 1, ¶ 7.

Eventually, in October 2009, Oglethorpe Bank "refused to allow the [l]ine of [c]redit to fund the monthly debt," thus breaking the agreement and causing the Note to go into default. See Dkt. No. 28. Defendants argue that the line-of-credit agreement acted as a "concurrent condition," such that Defendants are now excused from performing. Defendants also urge that the line-of-credit agreement estopps Bank of the Ozarks from recovering.

Bank of the Ozarks filed a Motion for Summary Judgment asserting that Defendants admitted Bank of the Ozarks's prima facie case and that none of Defendants' defenses are viable. See Dkt. Nos. 26, 32.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable

3

to the nonmovant. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. <u>Id.</u> at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## DISCUSSION

Because the <u>D'Oench</u> doctrine and its statutory counterpart, 12 U.S.C. § 1823(e)(1),[1] bar Defendants' two remaining defenses, summary judgment is appropriate. Under the <u>D'Oench</u> doctrine, when a federally insured bank fails, the bank's borrowers may not later assert claims or defenses other than legal defenses that are fully and properly documented in the failed bank's files. <u>See</u> <u>Baumann v. Savers Fed. Sav. & Loan Ass'n</u>, 934 F.2d 1506, 1515 (11th Cir. 1991). The rationale being that (1) regulators should be able to rely on the regular bank records when making decisions; and (2) banks headed for failure should

---

[1] The Eleventh Circuit has not decided whether § 1823(e)(1) applies just to the FDIC, or whether it also applies to a bank that succeeds the FDIC, like Bank of the Ozarks. However, the <u>D'Oench</u> doctrine does apply to a successor-in-interest. <u>See</u> <u>First Union Nat'l Bank v. Hall</u>, 123 F.3d 1374, 1379 n.9 (11th Cir. 1997); <u>Victor Hotel Corp. v. FCA Mortg. Corp.</u>, 928 F.2d 1077, 1083 (11th Cir. 1991).

4

not be allowed to insert unusual or even fraudulent new terms. See Langley v. FDIC, 484 U.S. 86, 91-03 (1987).

Thus, the issue becomes whether the line-of-credit agreement with Strange was properly recorded in Oglethorpe Bank's files. If the agreement was not properly recorded, the D'Oench doctrine would clearly bar any defense based on that agreement. Here, after viewing the record, it is clear that any line-of-credit agreement with Oglethorpe Bank was oral. Defendants admitted in their Responses to Requests for Admission that neither Oglethorpe Bank nor Bank of the Ozarks agreed "to mutually depart from the terms of the written Note." See Dkt. No. 26, Ex. 4. None of the loan documents contain any reference to a promise on the part of Oglethorpe to continue Timbes's father's line of credit. Nor is there any written documentation supporting the line-of-credit agreement. See Dkt. No. 26. Furthermore, most of Defendants' references to the arrangement with Oglethorpe Bank and Strange strongly suggest that the agreement was oral. For example, Defendants stated in their responses to Bank of the Ozarks's discovery requests that Oglethorpe Bank "related and thus promised by implication" that the credit lines would continue to be available. See Dkt. No. 26, Ex. 4. Thus, the agreement was clearly oral and not properly recorded in Oglethorpe Bank's records.

As a result, the D'Oench doctrine bars Defendants' two remaining defenses. Indeed, the doctrine is designed for exactly this sort of situation. Given Timbes' young age and the other circumstances of this case, this result has harsh application. However, to allow Defendants to avoid payment based on an agreement that Bank of the Ozarks had no notice of would be contrary to well-established law. Courts have repeatedly held that there is no discretion to balance the equities in deciding whether to enforce the prohibitions afforded by the D'Oench doctrine. See Murphy v. FDIC, 208 F.3d 959, 966-67 (11th Cir. 2000); Fed. Sav. & Loan Ins. Corp. v. Gordy, 928 F.2d 1558, 1567 (11th Cir. 1991); Loan Ass'n v. Amberley Huntsville, Ltd., 934 F.2d 1201, 1208-09 (11th Cir. 1991); FDIC v. Hamilton, 939 F.2d 1225, 1229 (5th Cir. 1991). Thus, this Court must grant summary judgment.

## CONCLUSION

Defendants have admitted Plaintiff's prima facie case and have not raised any valid defenses. Accordingly, Plaintiff's motion, Dkt. No. 26, is **GRANTED**. The Clerk is directed to enter judgment in favor of Plaintiff against Defendants Prince Land, LLC and Timbes in the amount of:

1. $719,000.00 for unpaid principal;
2. $92,170.50 for unpaid interest; and
3. $121,675.58 for statutory and contractual

attorneys' fees.

**SO ORDERED**, this 13th day of December, 2012.

                                                                    _____
                                                                    LISA GODBEY WOOD, CHIEF JUDGE
                                                                    UNITED STATES DISTRICT COURT
                                                                    SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)